UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                      Case No. 08-CR-0157

EDWARD WAYNE WEST,

    Defendant.

---

### DECISION AND ORDER DENYING MOTION TO SUPPRESS IN-COURT IDENTIFICATION OF DEFENDANT

Previously, this court ruled that an in-custody lineup involving Edward West was unduly suggestive and suppressed the lineup identification. However, it was concluded that the lineup witnesses would be allowed to testify at trial and attempt to make in-court identifications. Subsequently, West entered a conditional guilty plea to one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). On appeal, the Seventh Circuit Court of Appeals vacated the convictions and remanded for the purpose of determining whether any in-court identification will have an independent basis and be free from the taint of the improper lineup. *United States v. Edward West*, 628 F.3d 425, 427 (7th Cir. 2010). Notwithstanding the transcribed testimony of the lineup witnesses from the suppression hearing, the court granted defense counsel's request to conduct a second hearing to elicit additional information regarding whether each witness will have an independent basis for an in-court identification. With due regard for the testimony of the

eyewitnesses, the documents in the record and the hearing conducted on February 8, 2012, the court's findings are set forth below.

If a pretrial identification is suppressed under the Sixth Amendment, witnesses may attempt to identify a defendant at trial if the prosecution can establish that the in-court identification is reliable. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the prosecution bears the burden of establishing an independent source for the in-court identification by clear and convincing evidence. *West*, 628 F.3d at 430 (7th Cir. 2010). In *Wade*, the Supreme Court listed several factors that should be considered when evaluating whether an in-court identification is independently reliable, including, but not limited to, any prior opportunity to observe the alleged criminal act, discrepancies between any pre-lineup description and the defendant's actual description, identification of another person prior to the lineup, identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. *Wade*, 388 U.S. at 241.

Here, all three lineup witnesses testified in December 9, 2008, and February 8, 2012, evidentiary hearings regarding their ability to positively and unequivocally identify West as being involved in bank robberies. (Doc. 22; 101.) As a result of these proceedings, including broad cross examination of each of these witnesses by defense counsel, no doubt was cast as to whether the witnesses may offer independent, untainted, testimony.

First, Wendy Graham, a teller at the Landmark Credit Union on May 23, 2008, testified that on the day of the armed robbery she was approximately three feet from the suspect and had about two minutes to view him. (Doc. 22 at 74-75.) The area was well

lit and without obstruction. (*Id.* at 75.) The suspect had his left hand on a gun and demanded all of the money from her bottom drawer. (*Id.* at 74.) Graham testified that she wears glasses for reading and that she had her glasses on at the time of the robbery. (*Id.* at 75.) She described the suspect as having a large nose, acne scars on his face, and approximately six feet tall. (*Id.*) Although the suspect was wearing a baby blue hooded sweatshirt, he did not have the hood on his head while he was at Graham's window. (*Id.* at 76.) During the February 8, 2012, hearing, Graham testified that she gave a description to the Wauwatosa Police Officer and the statement was admitted into evidence without objection. (Doc. 101.) Graham did not identify any other person and did not view any videotapes before participating in the lineup. (Doc. 22 at 81.) Only four days had passed between the robbery and the lineup, and Graham was "100 percent" positive about her identification. (*Id.* at 79.) Significantly, West conceded in his January 16, 2009, brief in support of his motion to suppress that "Graham's identification of West was reliable, even if the lineup procedure was suggestive." (Doc. 24 at 18-19).

Second, Jennifer Pues testified that she was the head teller at U.S. Bank at Capitol and Lisbon on May 12, 2008, when it was robbed. (Doc. 22 at 83.) She was approximately three feet from the suspect and had an unobstructed view as the suspect approached the teller right next to her. (*Id.* at 85.) During the hearing on February 8, 2012, Pues testified that the suspect had a hood over his head but she could see his face. Even though she pressed the foot pedal alarm, she had her eyes on the suspect the entire time. (Doc. 101.) According to Pues, she observed the suspect for approximately two or three minutes because she was not parallel with the next teller but at an angle, and the room was well lit. (Doc. 22 at 85-86.) Pues testified that she has perfect vision, and

described the suspect as tall, having a darker complexion, a large nose and pockmarks. (*Id.*)

West argued that Pues is unreliable because she asked to view the still photo from the surveillance tape of the robbery prior to the lineup. (Doc. 22 at 91.) However, she testified that she was not doubtful as to her recollection. (*Id.* at 92.) In reviewing the surveillance tape, she simply wanted to be certain when she went to the lineup. (*Id.* at 90-91.) Pues added that she was told that the suspect may not be in the lineup, and that fifteen days passed between the robbery and the lineup. (*Id.* at 86.) There were no discrepancies between her prelineup description and West's actual description.

Finally, Shikara Amore was a teller at U.S. Bank on May 12, 2008, when it was robbed. Although she was not the teller who was robbed, she was getting cash from Jennifer Pues. (*Id.* at 94.) In the suppression hearing of December 9, 2008, Amore testified that she was approximately one foot from the suspect and had an unobstructed view. (*Id.* at 96.) Amore, who has 20/20 vision, testified that the suspect had a hoodie over his head but she could see him from the side and observed that he had a big nose. (*Id.* at 96-98.) She further described the suspect as tall, medium build, with a dark complexion. (*Id.* at 104.) Although Amore testified that she was pretty nervous, she was 100% confident with her identification, she did not identify any other person, and that only fifteen days passed between the robbery and the lineup. (*Id.* at 101, 102, 105.)

On February 8, 2012, Amore testified that she was not asked to participate in any identification procedure other than the lineup, and that she was told that the suspect may not be in the lineup. (*Id.* at 101.) She did not review photographs. (Doc. 101.) Again,

4

there were no discrepancies between Amore's prelineup identification description and West's actual description.

Although West argued that the recollections of the lineup witnesses were tainted because they viewed West sitting with defense counsel during the suppression hearing while wearing an orange county jail jumpsuit, none of the witnesses ever identified or described any other person as the person they observed robbing their bank or credit union. Thus, the record establishes that any in-court identifications by aforementioned witnesses will be based on their personal observations independent of their lineup identifications. Hence, this court finds that the government has shown by clear and convincing evidence that its three lineup witnesses may be asked at trial whether they can identify the defendant. Now, therefore,

IT IS ORDERED that Edward West's motion to suppress is denied with respect to any in-court identification of the government's lineup witnesses.

Dated at Milwaukee, Wisconsin, this 13th day of February, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE